# COOS,

## Goodall *vs.* Marshall, Admr.

Where administration is taken out in two States, *it seems* that the mere fact that a claim was presented for allowance in the State where the intestate resided, before it was offered for proof under the ancillary administration, cannot affect its allowance in the latter jurisdiction.

Whether the disallowance of a claim against an insolvent estate, by the commissioner under the principal administraton, would, of itself, constitute a bar to its allowance in the ancillary administration, *quære?*

Where a party, being a citizen of this State, presented a claim to the commissioner of an insolvent estate in Vermont, where the intestate resided; and, the administrator having appealed from the commissioner's decree allowing the same, the case was tried on its merits, and judgment finally rendered in the supreme court of that State in favor of the administrator; that judgment constitutes a good defence to the same claim by the same party in this State, and an ancillary administrator here may plead such judgment in bar of its allowance.

Appeal, from an allowance made by the commissioner of Alzo Rich's estate, in favor of Goodall, on the following claims, viz : *first,* on said Rich's note for $1000, dated December 31, 1835, payable to one Jordan, or order, and by him indorsed to one Dewey, and by said Dewey to said Goodall ; *second,* for $26.28, expenses paid by Goodall in a suit against Rich, abated by his death and the insolvency of his estate ; *third,* for $1250, had and received by Rich to the use of Goodall, and the same sum as expended by said Goodall at the request of said Rich.

The appeal was duly entered, and at a subsequent term the defendant pleaded in substance the following alleged facts : That in March, 1838, before the present proceedings were commenced, Goodall went before commissioners on

said Rich's estate, appointed in Essex county, Vermont, where he resided at his death, and where principal administration had been granted, and presented said claim on said note to them for allowance; that it was allowed by said commissioners in their report, and that the administrator excepted to the allowance; that an appeal having been duly taken and entered in the court of common pleas for said Essex, the parties appeared, a declaration was filed by said Goodall, and the case was tried on the general issue at the May term, 1840, and a verdict and judgment rendered in favor of the administrators, to which said Goodall took exceptions; and the case was thereupon transferred to the supreme court of Vermont, where, the parties having been heard, the judgment of the court below was at the May sittings in 1841 affirmed; and that said final judgment remains in full force.

The plaintiff replied substantially as follows: That said note was, at its date, given to the payee in consideration that the payee would convey to Rich certain corporate rights and improvements in navigating logs, &c., on a river in Essex county, Vermont, and also certain timber contracts, with some provisions for re-deeding or cancelling the same, if said Rich preferred, it being understood that the payee might sell the note and raise money thereon at his pleasure: That, confiding in this agreement, the payee did make the conveyances, and receive the note; and that on the second day of January, 1836, said payee, for a valuable consideration, sold and indorsed said note to one Dewey, without informing him of the agreement under which it was given: That on the 10th of said January, Rich put his deed on record in Essex county and the several towns where the improvements were made: That on the 15th of October, 1836, the plaintiff purchased the note of said Dewey, without notice, and for a good, full, and sufficient consideration, he then residing in Bath, and the said Rich then residing in Northumberland, N. H.; and that the plaintiff then was, and has ever since

continued to be, the sole *bona fide* owner of said note : That he entered an action on the note at the May term, 1837, which was pending at the time of the defendant's death, and afterwards dismissed on that suggestion, the plaintiff's costs in the same then being $26.90 : That Rich, having left estate in Coos county, it having been represented by Marshall, administrator thereof, as an insolvent estate, was decreed to be administered upon as such, and one Bellows appointed commissioner : That said commissioner, having given notice, &c., the said Goodall appeared before him and presented said note and bill of costs, and the same having been allowed in full as a just claim, said Marshall, as administrator, claimed this appeal.

The plaintiff, in continuation of his replication, averred that neither the said Rich, nor his administrator, had ever offered to reconvey the aforesaid grants to either the said Jordan, or the said Dewey, or the present plaintiff, but that said rights and contracts remain the property of Rich's estate ; and continued as follows : " Wherefore, as the plaintiff hath the right, as a citizen of this State, to obtain his dividends from said Rich's estate in this State, independent of all proceedings respecting the settlement of said estate in the State of Vermont, and as, by the laws of this State, the plaintiff has the right to have said note and account allowed to him, he prays judgment," &c. &c.

The defendant demurred specially, and assigned the causes following :

1. The said Goodall has not in his said replication confessed or admitted the matter stated and set forth in the said Marshall's plea, or traversed or denied the same.

2. The said replication does not answer the whole or any part of the said plea.

3. The said replication does not aver or allege that said note in said plaintiff's declaration was ever indorsed by said Dewey, or any one else, to said Goodall.

4. The said replication does not aver that any administra-

tion was ever taken out of the estate of said Alzo Rich, in the State of New-Hampshire, or that any person was ever appointed administrator in the State of New-Hampshire on said estate.

5. The said replication does not allege or aver that said note and costs, in the plaintiff's declaration mentioned, was presented to said Bellows during the life of his said commission; nor does it state when said Bellows was appointed commissioner, or when said note and costs were presented to him for allowance, or when said report was made by said Bellows, or that said note and costs was exhibited to any commissioner before the time for exhibiting claims against said estate had expired, and said claims barred by the statute law of this State.

6. There is no averment in said replication that said Alzo Rich in his life-time, or his administrator after the said Alzo Rich's death, had any notice of any sale, transfer or indorsement of said note to said Dewey or said Goodall.

7. Because said replication is double in this;—it assumes to avoid the plea of the said Marshall in this, by averring a right of recovery by virtue of the laws of this State, independent of the laws of Vermont, and the adjudication on said note in said State, and also assumes a right to recover the same, because said Rich recorded said deed in said State of Vermont.

8. Because said replication is informal, uncertain, and insufficient.

Joinder in demurrer.

*Wells*, for the defendant. The domicil of Rich was in Vermont, where principal administration was granted. This claim was allowed there *before* any proceedings in this State; and, an appeal having been taken, there was a trial on the merits, which resulted in a judgment in favor of the estate. The main question now is, *is that judgment a bar to farther proceedings in this State ?* While Rich lived, the cred-

Goodall *v.* Marshall.

itor had a right to pursue his claim in every State in which he might find the person or property of his debtor. But if, in any forum in which he asserted his claim, final judgment should have been rendered against him, upon the merits of his claim, by a court of competent jurisdiction, such judgment would bar farther proceedings in any other jurisdiction. If it were not, the provision of the Constitution of the U. S., as to the faith to be given to judicial proceedings in each State, and the act of Congress (1790, ch. II.) that "such records shall have such faith and credit given to them in every court and office within the U. S. as they have by law or usage in the courts or offices of the State from whence the same are or shall be taken," are rendered nugatory.

We suppose that when the debts are established, and the funds collected, all are to be transmitted to the principal administration, and the dividend there declared. If so, it would be a novelty if we sustain this claim, and send it to a Vermont court to be paid, when the highest tribunal of that State has decreed it to be invalid.

If execution is sought here on a foreign judgment, the court may inquire into its validity; but the losing party has no right to institute a new suit here, and litigate the same matter anew, if the defendant chooses to plead the judgment in bar. It is *res judicata.* *Story's Conflict* 500 ; 2 *Kent's Com.* 102 ; *Ld. Kame on Eq.* 2, 365, cited in *Story's Confl.* 502 ; 1 *Johns. Cases* 345.

The judgment in Vermont would be conclusive, though the proceedings had been commenced first in this State. 7 *N. H. Rep.* 257, *Whittier* vs. *Wendell ;* and 9 *Johns. R.* 221, *Bowen* vs. *Seymour.*

The Vermont courts would not retry this claim. The courts of this State should not. The Constitution of the U. S. and the act of Congress give to the Vermont judgment the same force and effect in New-Hampshire that they would have in Vermont. *Story's Confl.* 500 ; 1 *Johns. Cases* 345 ; 7 *N. H. Rep.* 257 ; 9 *Johns. R.* 221 ; 9 *Mass. R.* 462 ; 6 *Pick. R.* 223.

*Goodall*, pro se. The causes of demurrer specified are clearly insufficient. As to the 1st and 2nd, see *Archbold on Civil Pleading*, title, *Replication*, p. 267, and *authorities there cited; Gould on Pleading*, ch. 3, § 167, p. 152; *Stephen on Pleading* 220, 221. As to the 3rd, 4th and 5th specifications, see *the same authorities, and Gould*, ch. 3, § 3, p. 49. The 6th is false. The replication does aver *knowledge* in Rich. Besides, it is not necessary to give notice of the transfer of negotiable paper. The 7th specification, also, is not true. The plaintiff only assumes that he has a right to recover by the laws of New-Hampshire, independently of those of Vermont. If the replication contains more averments than are necessary for this purpose, they may be rejected as surplusage, but will not constitute duplicity. 15 *Wend. R.* 357, *Russell* vs. *Rogers*.

The defendant demurs to the replication; thus the whole record is open, and judgment must be rendered against the one first in fault. 5 *Comyn's Dig.* 484, title, *Pleader; Arch. C. Pl.*, title, *Demurrer*, § 3, p. 351; *Gould's Pl.*, ch. 9, § 36 *to* § 40; 4 *Cranch's R.* 333; 3 *Cranch's R.* 229; *Stephen's Pl.* 162.

The plea does not answer the whole declaration, but yet concludes in bar of the action, and so, bad. *Gould's Pl.*, ch. 6, § 98, p. 378; *Arch. Pl.* title, *Pleas in Bar*, § 2, p. 189.

The judgment, if well pleaded, is no bar even to the note. A discharge, under an insolvent law in force at the time the note is given, is no bar to an action by a citizen of another state, to whom the note has been indorsed before due, for a good consideration. 5 *Mass. R.* 509; 10 *Mass. R.* 337; 6 *U. S. Con. R.* 529; 6 *Peters' R.* 348; 8 *Pick. R.* 194.

The property in this State is liable for all just claims by citizens of this State. *Story's Const.* 421, 2, 3.

The plaintiff contends that the judgment is no bar:

1st. Because the local laws of Vermont will not govern in this State, as to negotiable paper, negotiated before due,

*bona fide,* and payable generally ; those laws referring to the remedy only.

2nd. The proceedings in probate courts in New-Hampshire are independent of the laws of Vermont, and our citizens have here the right to all assets in this State, and shall not be driven to a foreign government for redress.

3rd. If a plaintiff seeks redress in a foreign government, it is independent of seeking it here, and is no bar to proceedings here until he gets his pay.

4th. As this note was given by Rich to Jordan, the payee, to raise money whenever he could, he thereby agreed that if he should for that purpose sell it to a citizen of New-Hampshire, he would pay it according to the laws of New-Hampshire ; and it is now fraudulent to attempt to avoid it.

PARKER, C. J. The facts in this case appear in very extended form in the pleadings, and have been commented upon in the arguments of counsel very much in detail. We have not, however, found occasion to dwell upon many of the particulars, nor is it necessary to refer to them in making known our decision.

The mass of facts set forth in the replication furnish no answer to the plea of the defendant administrator, and we are, therefore, thrown back upon that plea ; and it only remains for us to consider whether it be good or bad as a plea in bar. If the judgment rendered in Vermont constitutes a bar, the replication contains nothing which can avoid it. If that judgment does not constitute a bar, the plea is bad.

The fact that the proceedings in Vermont were instituted before the claim was presented in this State, has been referred to. We doubt whether that fact, of itself, would make any difference. At all events, it has not been necessary to depend upon it in coming to a conclusion.

There seems at the first glance no reason why the judgment in Vermont should not constitute a bar to any future proceedings. It was the result of similar proceedings,

legally and duly commenced by the same person, in a tribunal which had jurisdiction of the subject matter. In those proceedings the claimant in a formal declaration showed his claim to be the same which he now presents here. An issue was made up, involving the existence of the debt, and, after a trial upon the merits of the claim, the jury have found a verdict against the claimant, and the highest court of the State have ratified the judgment upon that verdict.

Perhaps, had there been no farther proceedings than the presentation of the claim to the commissioner in Vermont, and its disallowance by him, those facts would not have constituted a bar to its allowance here. But even that might well be doubted, and should the question arise it will require consideration. The judgment of an inferior tribunal, having jurisdiction of the controversy, and acquiesced in by the losing party even negatively, as by not claiming an appeal, review, or the like, is in general certainly conclusive.

Had a judgment on the matter now in dispute been rendered between the parties in the supreme court of Vermont during the life time of the intestate, it would, on the principles stated by this court in 7 *N. H. Rep.* 257, *Whittier* vs. *Wendell*, have been conclusive against the present plaintiff, in a similar action in this State, even if the action here had been commenced before the judgment was rendered in Vermont. That verdict and judgment having, by virtue of the Constitution and laws of the United States, "full faith and credit" in this State, might have been pleaded in bar of the action by Goodall here, *if the other party had been living.*

Here the difficulty in the present case arises. The judgment in Vermont was not between the present claimant and the deceased, but it was between him and the principal administrator of the estate of the deceased. Nor is the present appeal between him and that principal administrator, but the opposing party now is merely an ancillary administrator, whose legal connection with, or relation to the principal administrator, if any such connection should be thought to

exist, is of the most uncertain or remote nature, in this State at least, existing only in a contingent liability to pay over and deliver "the rest and residue of the estate," under the direction of the judge of probate. *N. H. Rev. Stat., ch.* 158, §12.

The general rule is laid down very clearly in 1 *Phillips Ev.* 324. "A verdict, or judgment in a former action, upon the same matter, directly in question, is evidence for or against privies in blood, privies in estate, and privies in law, as well as for or against the parties to the suit." And again, at p. 326, "it is laid down, also, as a general rule, that a verdict is not evidence for a stranger against one who was a party to the former suit."

Are the administrators in different States, in this sense, strangers? Or can they be considered in any sense privies in law? As a general rule, it seems to be settled that there is no privity between the principal and the ancillary administrator. *Story's Confl. of Laws* 436. See, also, 3 *Met. R.* 109, *Fay* vs. *Haven;* 15 *Peters' R.* 1, *Vaughan* vs. *Northup;* 7 *Paige R.* 239, *McNamara* vs. *Dwyer; Metcalf's Yelv.* 33, *note.*

An action of debt on a judgment against a foreign administrator will not lie against the administrator of the same intestate here. 2 *Rawle R.* 431, *Brodie* vs. *Bickley.*

Nor can the ancillary administrator, as such, bring suit on a judgment recovered by the principal administrator. 16 *Mass. R.* 71, 73, *Talmage* vs. *Chapel.* But we know of no decided case, or expression of judicial opinion, which would disallow a plea in bar, on either side, founded on a judgment in another State. In the case last cited, which was an action by an administrator, brought in Massachusetts upon a judgment recovered by him in New-York, the court said, "an administrator appointed here could not maintain an action upon this judgment, not being privy to it. Nor could he maintain an action on the original contract : *for the defendants might plead in bar the judgment recovered*

*against them in New-York.''* If a debtor to the estate
may successfully make such a plea to an action for a debt
which, before judgment in New-York, the ancillary admin-
istrator might have collected from him in another State, why
may not an ancillary administrator avail himself of a similar
plea in bar of a claim which has already been passed upon
and adjudged, in legal form, between the same claimant and
another representative of the same intestate? We see no
distinction in principle between the two cases.

In considering the effect to be given to verdicts and judg-
ments, courts will always have regard to the real parties to
the suit. And in this way various exceptions to the general
rule have come to be acknowledged, such as matters of cus-
tom, tolls, commons and highways. Also, in questions of
pedigree, questions as to the settlement of paupers, (when
adjudged in the quarter sessions) criminal proceedings, judg-
ments of courts of exclusive jurisdiction, and judgments *in
rem* in the exchequer and admiralty, are also exceptions.
And when we consider the reasons upon which these fami-
liar exceptions are founded, the case before us seems one
which may well be added to the list. The judgment plead-
ed in bar is certainly somewhat in the nature of a judgment
*in rem.* Or the estate of the intestate may be regarded as
the real party, notwithstanding there is no privity between
the different administrators.

There are many illustrations of this disposition of courts
of justice to look to the real instead of a nominal party.
In ejectment, the lessee of the plaintiff and the tenant in
possession are considered the real parties. 1 *Phil. Ev.* 324;
6 *Binney's R.* 450, *Bailey* vs. *Fairplay.* And the equita-
ble assignee of a chose in action, by a suit at his request and
expense. 3 *Green. R.* 362, *Rogers* vs. *Haines.* So the
record in an action of trespass, *Dunning* vs. *Caruthers*, was
admitted in an action, *Calhoun's Lessee* vs. *Dunning ;* it
appearing that Calhoun's name was employed for Caruthers,
and that the parties were really, though not nominally, the

Goodall *v.* Marshall.

same in both suits. 4 *Dall. R.* 121 ; and in this connection see, also, 5 *Esp. R.* 56, *Strutt* vs. *Bovingdon ;* although there may, perhaps, be some question as to the precise correctness of the latter case. In the action of *Case* vs. *Reeve,* 14 *Johns. R.* 82, *Kinnersly* vs. *Orpe, Doug. R.* 499, was cited. It was an action of debt, for a penalty for killing fish, brought against Doctor Cotton's servant, in which the record of an action against a former servant was given in evidence ; the trespass having been repeated by Doctor Cotton's express orders. Mr. Ch. Jus. *Spencer* said that it was reconcilable with the rules of evidence, on this ground only, that both suits were substantially against Doctor Cotton himself ; inasmuch as the acts of trespass were committed by his express direction, for the very purpose of trying the right to the fishery. He defended both suits ; and though there were *nominally* different defendants, *substantially* Cotton was the real defendant.

With these principles and precedents before us, we do not hesitate to pronounce the judgment in Vermont, rendered on the merits, against the plaintiff, a good bar to the present proceedings to sustain here the claim already fully passed upon by the tribunals of that State.